# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

ALLISON TSIUMIS
     *Plaintiff,*

**v.**

CITY OF KNOXVILLE, TENNESSEE      Case No. 3:26-cv-197
CHRISTIAN FERRERAS
     *Defendants.*         JURY DEMANDED

## COMPLAINT

Comes now the Plaintiff, ALLISON TSIUMIS, by undersigned counsel and for her Complaint against the Defendant states the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

1

4. Each of Plaintiff's claims arise under the Fourth Amendment to the United States Constitution, made applicable to the states and state actors through the Fourteenth Amendment to the United States Constitution.

5. This Court is a proper venue for these claims pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

6. Plaintiff Allison Tsiumis is an adult resident of Loudon County, Tennessee.

7. Defendant Ferreras, at all times relevant to this Complaint, was a police officer with the City of Knoxville Police Department in Knox County, Tennessee.

8. Defendant City of Knoxville is a municipal entity organized under the laws of the state of Tennessee.

## FACTUAL ALLEGATIONS

9. Plaintiff Allison Tsiumis is a 61-year-old retired Senior Executive of the Federal Bureau of Investigation (FBI) and has resided in Loudon County, Tennessee for many years.

10. Plaintiff Tsiumis' career in the FBI spanned more than thirty-three years, including working as an Intelligence Analyst assigned to various highly classified National Security investigative programs. She was granted Top Secret clearances and access to sensitive compartmented programs in her scope of analysis

2

and intelligence production responsibilities. In the latter half of her career, she was promoted to management positions leading intelligence programs and personnel, and served in the Senior Executive Service for six years prior to retiring from the FBI. As an employee holding positions of trust, accountability, and access to sensitive National Security intelligence, she was subject to a full background investigation as a condition of hiring, then periodic five-year re-investigations, including polygraph tests, annual filing of personal financial disclosure reports, and random drug testing.

11. Following her retirement from federal service, Plaintiff Tsiumis remained active in her community and continued to embody the values of integrity, public service, and compassion that characterized her career.

12. At all times relevant to this Complaint, Plaintiff Tsiumis enjoyed good health and maintained an independent, active lifestyle. She regularly exercised and worked part-time at an animal care center. On the afternoon of June 15, 2025, Plaintiff Tsiumis left her home in Lenoir City, Tennessee, intending to do some Father's Day shopping for her husband at West Town Mall. She drove eastbound on West Town Way, and made a right turn at a green light at the intersection of West Town Way and Montvue Road, which leads to the West Town Mall. Suddenly, another vehicle driven by Jessica Nodine (with one passenger, her sister Nicole Nodine) came into Plaintiff Tsiumis' lane and collided with her vehicle.

13. Both vehicles sustained only minor damage.

14. No one was injured in the collision.

15. Both drivers immediately pulled over safely, and Jessica Nodine called

3

911 to request an incident report.

16. Two Knoxville Police Department officers arrived separately to the scene of the accident. Officer Baird was the first to respond. He initially spoke with the driver and passenger of the other vehicle before approaching Plaintiff Tsiumis and asking her to describe the accident.

17. Officer Ferreras then arrived on the scene and took over the investigation. His body-worn camera footage of this incident is attached as Exhibit 1 to this Complaint.

18. Officer Ferreras spent approximately thirty seconds asking the Nodine sisters their version of events.

19. Jessica Nodine explained the collision in a way that indicated Plaintiff Tsiumis was at fault.

20. Defendant Ferreras then spent approximately twenty seconds asking Plaintiff Tsiumis her version of events. Plaintiff Tsiumis plausibly explained the collision in a way that indicated Ms. Nodine was at fault.

21. Neither driver's version of events could be readily proven or disproven based on the damage to the vehicles or any other readily available objective evidence.

22. Defendant Ferreras did not conduct a complete investigation of the collision during the sixty seconds he questioned the drivers and inspected the vehicles.

23. Defendant Ferreras walked back over to Officer Baird and stated, "I'm going to check her," referring to Plaintiff Tsiumis.

4

24. Defendant Ferreras asked Plaintiff Tsiumis whether she had "taken anything today" or "drank anything today" and she responded that she had not. Defendant Ferreras nevertheless claimed to detect the odor of an "alcoholic beverage emanating" from Plaintiff Tsiumis.

25. In fact, there was no odor of alcohol whatsoever on Plaintiff Tsiumis's person, breath, or in her vehicle. Defendant Ferreras's assertion that he smelled alcohol was fabricated and lacked any objective basis.

26. Despite the complete lack of evidence to suggest impairment, Defendant Ferreras continued to treat her as impaired without any corroborating indicators of intoxication.

27. At no time did Officer Baird assert or have reason to believe that Plaintiff Tsiumis smelled of alcohol or was impaired.

28. Without reasonable suspicion of intoxication, Defendant Ferreras initiated a series of field sobriety tests (FSTs) against Plaintiff Tsiumis.

29. Defendant Ferreras did not consider her age, medical history, or physical capabilities before ordering her to perform balance-dependent tasks on uneven ground on a busy roadway.

30. Plaintiff Tsiumis, a physically fit 61-year-old, performed the tests calmly, courteously, and with composure. She displayed no confusion, hesitation, or difficulty understanding instructions.

31. Defendant Ferreras first administered the Horizontal Gaze Nystagmus (HGN) test, which is generally regarded as the most scientifically reliable of the

5

standardized field sobriety tests when properly administered. It measures involuntary eye jerking (nystagmus) which becomes more pronounced if the subject is under the influence of alcohol.

32. The HGN test looks for six specific clues (three in each eye) that may indicate impairment by alcohol: (1) lack of smooth pursuit, (2) distinct and sustained nystagmus at maximum deviation, and (3) onset of nystagmus prior to 45 degrees.

33. Lack of smooth pursuit occurs when the eyes jerk or jump rather than tracking a stimulus smoothly from side to side. Distinct and sustained nystagmus at maximum deviation is present when the eye exhibits involuntary jerking that continues for at least four seconds while held as far to the side as possible. Onset of nystagmus prior to 45 degrees occurs when the eye begins jerking before reaching a 45-degree angle from center.

34. Officer Ferreras's HGN administration contained several procedural errors, including starting passes on the wrong eye, inconsistent timing, failing to hold the stimulus for the required four seconds, skipping the 45-degree onset check, giving incomplete instructions, and using a pen light that switched on and off intermittently (which Plaintiff Tsiumis pointed out to him three times and for which Defendant Ferreras offered no explanation).

35. Plaintiff Tsiumis demonstrated smooth pursuit, showed no distinct or sustained nystagmus at maximum deviation, and displayed no onset of nystagmus prior to 45 degrees. Both eyes tracked the stimulus equally with no resting nystagmus observed.

6

36. Defendant Ferreras' incorrectly administered HGN test provided no objective indication of impairment.

37. After completion of the HGN test, Defendant Ferreras walked over to Officer Baird and falsely stated that "she's got some HGN."

38. After the HGN test, Officer Ferreras continued with the Walk-and-Turn (WAT) and One-Leg-Stand (OLS) tests.

39. Officer Ferreras failed to give complete instructions for both tests and omitted key standardized language which renders the results unreliable.

40. He never asked complete medical questions or screened for preexisting injuries or balance issues that could affect performance.

41. Plaintiff Tsiumis noted her high-heeled sandals might affect balance but preferred not to do the tests barefoot on the hot dirty pavement. Officer Ferreras did not address the issue; barefoot performance was impractical anyway because the roadway was too hot.

42. Portions of the WAT were not fully visible on body-camera footage, and the OLS began without first placing her in the proper instruction stance.

43. These procedural errors and environmental factors (footwear and roadway conditions) rendered the test results unreliable.

44. Defendant Ferreras did not observe any open containers, prescription medications, or drug paraphernalia in Plaintiff's vehicle because no such objects were in her vehicle.

45. The facts readily available to Defendant Ferreras would not have led

7

any reasonable officer to believe that Plaintiff Tsiumis was "under the influence" as defined by T.C.A. § 55-10-401(1).

46. Defendant Ferreras asked Plaintiff Tsiumis whether she would consent to a blood test, and she agreed.

47. Defendant Ferreras then placed Plaintiff Tsiumis in handcuffs.

48. When Plaintiff Tsiumis asked whether she was being placed under arrest, Defendant Ferreras confirmed that she was.

49. Defendant Ferreras' decision to arrest Plaintiff Tsiumis for Driving Under the Influence was not supported by probable cause.

50. Following her arrest, Plaintiff Tsiumis was transported to the Knox County Detention Facility for a blood draw and booking.

51. The blood draw and intake procedures occurred in the presence of correctional staff and other detainees, causing Plaintiff Tsiumis significant humiliation and emotional distress.

52. Plaintiff Tsiumis remained in custody at the Knox County Detention Facility following the blood draw.

53. Plaintiff Tsiumis had to surrender all of her personal effects and was escorted into an office intake area and then to a bathroom, where a female deputy made her remove all of her clothes while the deputy watched.

54. Plaintiff Tsiumis wanted to keep her underwear on but was told she had to strip completely naked.

55. The female deputy took all of Plaintiff Tsiumis's clothes and issued her

8

an inmate's red top and bottoms, socks, rubber Croc-style shoes, plus worn, dingy gray panties and a sports-type stretch bra.

56. Plaintiff Tsiumis found it disturbing and disgusting that hundreds of other inmates had previously worn the government-issued panties.

57. Plaintiff Tsiumis was then placed in the Women's Holding Cell.

58. Eventually, Plaintiff Tsiumis was pulled out of the holding cell to have her fingerprints and mug shot taken.

59. Plaintiff Tsiumis was profoundly embarrassed that her fingerprints would be sent to the FBI – an organization she proudly served in a career of 33 years – in connection with her arrest and DUI charges.

60. She also knew that her mug shot would be posted on the internet for the entire world to see, even though she was completely innocent of the crime with which Defendant Ferreras falsely charged her.

61. During intake, Plaintiff Tsiumis was issued a sack containing a second inmate's uniform, bedding, towels, eating utensils, and an "Inmate Handbook."

62. Hours later, Plaintiff Tsiumis was transferred from the holding cell to the Women's Cell Block in another wing of the detention center. She was then assigned to a cell with another female inmate. A deputy informed Plaintiff Tsiumis she would be taken before a magistrate at either 8:00 p.m. or midnight for a bond hearing.

63. While in her cell, Plaintiff Tsiumis could only see a wall clock by pressing her face against the cell door window and looking sideways across the cell

9

block.

64. Plaintiff Tsiumis remained locked in her cell from approximately 8:00 p.m. onward, with the lights remaining on so that it was never dark enough to sleep.

65. Plaintiff Tsiumis was not taken to the 8:00 p.m. magistrate hearing, but around 9:30 p.m., a guard told her she would not see a magistrate and would instead receive pre-trial release "soon".

66. Plaintiff Tsiumis' tiny cell smelled of urine, with a metal toilet bowl protruding from the wall, across from solid metal bunk beds. She lay on the stiff foam and vinyl mattress for hours, with no other way to pass the time.

67. Plaintiff Tsiumis felt fatigued and emotionally drained but could not rest due to the uncomfortable environment.

68. At approximately 2:00 a.m., a guard told Plaintiff Tsiumis she would be taken to process out for release.

69. During release processing, Plaintiff Tsiumis and another female detainee had to stand with their backs to the wall while male inmates passed nearby.

70. When Plaintiff Tsiumis tried to read the release forms before signing them, the deputy told her she was taking too long and snatched her property inventory form from her.

71. Plaintiff Tsiumis was finally discharged after 2:30 a.m., more than twelve hours since her detention, arrest and incarceration.

72. Following Plaintiff Tsiumis' arrest, Defendant Ferreras prepared an Affidavit of Complaint (Exhibit 2) containing false statements:

10

a) Defendant Ferreras stated in the Affidavit of Complaint that "This incident occurred on or about Sunday, June 15, 2025 at 17:21..." Body-worn camera footage establishes the encounter occurred shortly before 2:30 p.m.

b) Defendant Ferreras claimed Plaintiff Tsiumis "stated that she was in the third lane from West Town Way, attempting to turn right to Montvue Rd., when she admitted to making a wide turn, causing her to crash into V#2." Body-worn camera footage confirms Plaintiff Tsiumis made no such admissions. On the contrary, Plaintiff Tsiumis adamantly denied responsibility for the collision and plausibly explained that the other driver was at fault for the collision.

c) Defendant Ferreras swore that he "detected a faint odor of alcoholic beverage emanating from her breath and person ... " and he "continued to detect the odor from her breath and person while standing on the side of the road, and with the wind blowing in different directions." However, there was no such odor because Plaintiff Tsiumis had not consumed any alcohol.

d) Defendant Ferreras swore that Plaintiff was "irate" and "argumentative." Body-worn camera footage shows Plaintiff calm, cooperative, and non-confrontational, expressing only confusion and shock at the accusation of intoxication.

e) Defendant Ferreras swore that Plaintiff stated that "it was just a car

11

accident." Body-worn camera footage confirms Plaintiff made no such statement. She repeated exactly the officer's words and disputed his allegation that the accident was her fault.

f) Defendant Ferreras swore that Plaintiff Tsiumis "poorly conducted" the Field Sobriety Test. Body-worn camera footage confirms that Plaintiff Tsiumis did not perform poorly on the FSTs.

g) Defendant Ferreras swore that Plaintiff Tsiumis was "intoxicated and a danger to himself [sic]." Plaintiff Tsiumis was not intoxicated and presented a danger to no one. Official Alcohol and Toxicology Reports from laboratory testing by the Tennessee Bureau of Investigation (TBI) confirmed that Plaintiff Tsiumis had no alcohol or controlled substances in her system at the time of her arrest. (attached as Exhibit 3).

73. As a condition of her bond, Plaintiff Tsiumis was required to have an Ignition Interlock (Intoxalock) device installed in her vehicle, which, in addition to the Intoxalock breathalyzer, included intrusive digital camera and GPS monitoring equipment installed and embarrassingly visible through her windshield.

74. The local government filed a "Notice of Ignition Interlock Device As A Required Condition of Bond," which falsely stated:

☒ Defendant has a prior conviction for Reckless Driving, Reckless Endangerment, DUI, Vehicular Assault, Aggravated Vehicular Assault, Vehicular Homicide, or Aggravated Vehicular Homicide.

75. On the contrary, Plaintiff Tsiumis has no criminal history, as

12

exemplified by her long tenure in the FBI, and during the June 15, 2025 arrest event, the body-worn camera footage of Officer Baird reveals Dispatch relaying via radio, that Plaintiff Tsiumis had no criminal record. His bodycam is attached as Exhibit 4.

76. Defendant Tsiumis had to appeal to the Court through her attorney to have the false court record rescinded.

77. During her pretrial release, the Intoxalock device malfunctioned and deactivated her vehicle's engine, stranding her at a busy intersection, which endangered her and other motorists, and required police assistance to re-route traffic around her disabled vehicle. This event and other instances of the device malfunctioning while she was operating her vehicle were both humiliating and highly stressful.

## DAMAGES

78. As a direct and proximate result of the above-stated violations of her federally protected rights, Plaintiff suffered:

    a) Attorney's fees and expenses incurred in defending the criminal prosecution;

    b) Costs related to the Intoxalock installation and lease services;

    c) Humiliation and damage to public reputation;

    d) Mental suffering and emotional distress.

79. Based on Defendant Ferreras' intentional and reckless misconduct, Plaintiff Tsiumis requests the award of punitive damages.

13

## CLAIM 1- UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT
## 42 U.S.C. § 1983

80. On June 15, 2025 Plaintiff Tsiumis was unlawfully seized and arrested for DUI by Defendant Officer Ferreras without probable cause in violation of the Fourth Amendment to the United States Constitution.

81. At the time of the arrest, Plaintiff exhibited no objective indicators of intoxication. She spoke clearly, followed all instructions, stood steadily, and demonstrated full control of her balance, coordination, and attention.

82. Defendant Ferreras lacked any specific, articulable facts to reasonably believe that Plaintiff was under the influence of alcohol or any controlled substance.

83. Defendant Ferreras ignored or failed to document exculpatory evidence, including Plaintiff's performance on all validated field sobriety tests and her unequivocal denial of any alcohol consumption.

84. There was no odor of alcohol, no smell of intoxicants or narcotics, no open containers, and no physical evidence whatsoever that would have indicated that Plaintiff was under the influence of any drug, narcotic, or alcoholic beverage.

85. Defendant Ferreras also failed to consider Plaintiff's age, medical status, and the physical environmental factors, all of which are required under established field sobriety testing protocols.

86. Defendant Ferreras arrested Plaintiff despite having no reasonable suspicion or probable cause to believe that any criminal offense had been committed.

87. Defendant Ferreras' actions constituted an unreasonable seizure of

14

Plaintiff's person under the Fourth Amendment.

88.     As a direct and proximate result of the wrongful arrest, Plaintiff suffered emotional distress, reputational harm, public embarrassment, and financial losses.

89.     Defendant Ferreras' conduct violated Plaintiff's clearly established right to be free from arrest without probable cause, guaranteed by the Fourth Amendment.

### CLAIM 2- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983

90.     Immediately after the arrest on June 15, 2025, Defendant Ferreras executed an Affidavit of Complaint in the General Sessions Court of Knox County, Tennessee initiating the prosecution of Plaintiff Allison Tsiumis for Driving Under the Influence in violation of T.C.A. § 55-10-401.

91.     The affidavit contained false material statements, all of which are directly contradicted by body-worn camera footage, objective testing (specifically, negative Alcohol and Toxicology Reports from the TBI ), and contemporaneous evidence.

92.     There was no smell of intoxicants or narcotics, no open containers, and no objective evidence whatsoever that would have indicated that Plaintiff was under the influence of any drug, narcotic, or alcoholic beverage.

93.     The affidavit was materially false and misleading and was presented to a judicial commissioner to obtain approval for Plaintiff's arrest and prosecution.

94.     Relying on the false affidavit, a judicial commissioner found probable cause and issued a warrant charging Plaintiff with Driving Under the Influence.

95. Without Defendant Ferreras' false statements, the affidavit of complaint does not establish probable cause.

96. Defendant Ferreras' statements were knowingly false or were made with reckless disregard for the truth and for Plaintiff's constitutional rights.

97. No reliable evidence supported the initiation of criminal charges against Plaintiff.

98. The TBI's Official Alcohol Report and Official Toxicology Report later confirmed that Plaintiff had no alcohol or controlled substances in her system at the time of her arrest.

99. As a result of the charge, Plaintiff was detained for over twelve hours.

100. The conditions of her release, including the malfunctioning and intrusive Intoxalock, significantly restrained Plaintiff Tsiumis' liberty.

101. Plaintiff Tsiumis hired a criminal defense attorney and was required to attend or be represented at six court dates in the Knox County General Sessions Court to defend the DUI charge.

102. On December 4, 2025, almost six months after Plaintiff Tsiumis' June 15 arrest, the DUI charge against her was dismissed unconditionally by the Knox County General Sessions Court.

103. As a direct and proximate result of Defendant Ferreras' unfounded prosecution, Plaintiff suffered humiliation, reputational harm, emotional distress, and financial losses.

104. Defendant Ferreras' conduct deprived Plaintiff of her right to be free

from prosecution without probable cause in violation of the Fourth Amendment to the United States Constitution.

105. The actions of Defendant were willful, wanton, and in reckless disregard of Plaintiff's rights, entitling her to compensatory damages, punitive damages, and attorney's fees under 42 U.S.C. § 1988.

## CLAIM 3 – MUNICIPAL LIABILITY AGAINST THE CITY OF KNOXVILLE FOR UNLAWFUL ARREST AND MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT 42 U.S.C. § 1983

106. Upon information and belief, the violations of Plaintiff Tsiumis's constitutional rights under the Fourth Amendment to the United States Constitution, and the resulting damages, were directly and proximately caused by the actions and/or inactions of the City of Knoxville, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a) Probable cause to detain, arrest, and criminally charge a citizen with DUI;

b) The proper administration of standardized Field Sobriety Tests (FSTs), including the Horizontal Gaze Nystagmus, Walk-and-Turn, and One-Leg-Stand tests in accordance with NHTSA protocols;

c) The failure to require its officers to consider, as part of a DUI probable cause determination, a person's footwear, roadway conditions, or environmental factors can affect a person's

17

performance on field sobriety tests;

d) The failure to provide training on how to distinguish between actual signs of alcohol or drug impairment and cues caused by physical limitations, improper test administration, or officer error;

e) The failure to provide training on when to modify field sobriety tests, screen for factors that render them unreliable, or utilize objective alternative methods such as preliminary or evidentiary breath testing when standard FSTs may be inconclusive or improperly administered;

f) Incentivizing officers to make DUI arrests while simultaneously failing to implement or maintain any system to ensure such arrests are validly supported by probable cause, resulting in the arrest of innocent drivers like Plaintiff Tsiumis;

g) Knowingly permitting its officers to include false, subjective statements like the defendant had "glossy eyes" or that the officer "detected the odor of alcohol" to bolster affidavits of probable cause in DUI arrests.

### REQUEST FOR RELIEF

Based upon all the foregoing, Plaintiff Allison Tsiumis requests:

I. Process be issued and that the Defendants be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. A jury be empaneled to try this case;

18

III.    That Plaintiff Tsiumis be awarded nominal damages;

IV.     That Plaintiff Tsiumis be awarded compensatory damages;

V.      That Plaintiff Tsiumis be awarded punitive damages against Defendant Ferreras in an amount to be determined by a jury for intentional violations of her federally protected constitutional rights;

VI.     That Plaintiff Tsiumis be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VII.    For pre- and post- judgement interest on all damages awarded;

VIII.   For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Ben Clark*
Wesley Ben Clark, #32611
Sarah Mansfield, #39476
Paul D Randolph #39667
BRAZIL CLARK, PLLC
760 E Argyle Ave.
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
paul@brazilclark.com
sarah@brazilclark.com

19